Vincent D. Garcia #124930
ISCC-D-1
P.O. Box 70010
Boise, Id. 83707

Case No: 1:20-CV-00001-DCN
Date: 5/27/20
Document Title: Plaintiff's "Verified" Prisoner's Civil Rights
Total Pages: 15   Inmate Initials Verifying Page Count: VG
Document(s) 2 of 5
Inmate Name: Garcia, Vincent
Inmate IDOC#: 124930

In The United States District Court
For The District Of Idaho.

| Vincent Daniel Garcia, | Case No. 1:20-cv-00001-DCN |
| Plaintiff, | Plaintiffs "Verified" Prisoner's Civil Rights |
| vs. | Complaint §1983, for Damages, Declaratory |
| Adam Miller, et al, | Relief, and Injunctive Relief. |
| Defendants | |

- Pursuant to Fed.R.Civ.P., Rule 15(a). Fowman v. Davis, 371, 178, 182, 83 S.Ct. 227 (1962); Williams v. Cargill Inc., 159 F.Supp. 2d 984, 997-98 (S.D. Ohio 2001), Plaintiff submits this Amended Complaint.

- Plaintiff requests a Jury Trial.

- Plaintiff will not sign Waiver for a Magistrate Judge. He Requests a District Judge.

- Introduction: Plaintiff, Vincent Garcia, an inmate within the Idaho Department Of Corrections (IDOC), housed at the Idaho State Correctional Center (ISCC), was Beaten Almost to Death on a Close Custody Unit at ISCC due to Customs and Policies Adopted, Created and Enforced by IDOC Officials, and Deliberate Indifference by ISCC/IDOC G-Block Unit Staff, which allowed the Attack to Continue for Approximately 20 Minutes. "Policy" is to "Abandon" units for One Hour during "Shift Change".

1.

"The treatment a prisoner recieves in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment". Helling v. McKinney, 509 U.S. 25, 31 (1993.). In particular, "prison officials have a duty to protect inmates from violence at the hand of other inmates." Famer v. Brennan, supra, 511 U.S. at 833." Having incarcerated persons with demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and it's officials are not free to let the state of nature take it's course". Ibid. (citations omitted). A prison official violates the Eighth Amendment when two requirements are met. Id. at 834. "First, objectively viewed, the prison official's act or omission must cause 'a substantial risk of serios harm'". Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting Farmer, 511 U.S. at 834). Second, the prison official must act with "deliberate indifference" ("recklessness") regarding the inmate's health and safety. Farmer, 511 U.S. at 834, 835. In other words, an inmate must sufficiently allege that the prison official "knows that the inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it". Id. at 847.

Now, in this instant case... ISCC is Notoriously known by the Entire State as "Gladiator School". When CCA was removed from Power and Idaho's "IDOC Officials" took over....it did NOT change the inmates nor their Violent Intent. Plaintiff was in G-Block....IDOC's Most Violent Unit. He was Attacked in the Day Room for 20 Minutes. There is No Excuse "Why" these Officials allowed this. Even if it was a "Blind Spot" for the

2.

cameras. But, here is the Gravamen of this Complaint. IDOC Officials at ISCC, By name Warden Christensen, D.W. Warden of Security David Dietz, Cpt. Martinez, and G-Block Unit Sgt. Adam Miller have Adopted, Created and Enforced a "Policy" (By their own admittance) to Abandon the Close Custody Unit known as G-Block for "One Hour" every "Shift Change". They go even farther down the path of Deliberate Indifference as during the 2:30 pm "Shift Change" they Not Only Abandon the Unit.... they do so while Close Custody Gang Member Inmates are Out of their Cells and Roaming Free on the Unit able to commit 20 Minute Long Murderous Attacks without IDOC Officials Interfering. In Grievance/Appeal # IC1900001067, three of the four Defendants openly admit that... not only is this their "Policy"....but, they are fully aware of the facts that "STG" (Gang Members) know of this "Policy" and Plan Their Attacks during this Daily "One Hour" of IDOC Official Free Time out of their cells. So, Defendants admit their aware of their Policy's Flaws, but do Nothing to Rectify it. Therefore, the Farmer requirements are both fully met. As these "prison officials act" e.g. Policy, caused "a substantial risk of serious harm", and they acted with "Deliberate Indifference" ("recklessness") regarding the inmate's health and safety".

- For these reasons, Plaintiff suis these Defendants in their Official Capacities and in their Individual Capacities for their Personal Choices and Involvement.

3.

Exhibit - 0001 eg 2 of 3

# Idaho Department of Correction
## Grievance Form

| | | | |
|---|---|---|---|
| Offender Name: | GARCIA, VINCENT DANIEL   JR | Location: | ICC |
| Offender Number: | 124930 | Number: | IC 190001067 |
| | | Category: | SECURITY |

### Offender Grievance Information

Date Received:   08/14/2019

The problem is:

The issue is not weather a security check was done on time upon shift change. The issue is why staff was not efficiently moitoring the political tiers on this political unit (G) knowing that political member will attack their own as easily as a rival political member. the issue is why in a closed custody unit I was beaten uncouscious and continuously beaten while unconscious cannoticed by staff for up to 20-40 minutes. Time of incident told to victims mother Via Warden Christensen. Officers notice ie: inmates on top tiers, no shirts on, hats on indoors but did not see this for the time mentioned in the aforementioned?

I have tried to solve this problem informally by:

Kiting Warden Christensen who confirmed Staff did their "Tier check in a timely member" however disregarded the issue as to the fight and the amount of time it wasted & the injures I sustained.

I suggest the following solution for the problem:

To resolve this by staff improving on how they carry out their duties for monitoring political close custody units. And to discuss a monetary settlement for my pain & suffering

### Level 1 - Initial Response

| | | | |
|---|---|---|---|
| Date Forwarded: | 08/14/2019 | Date Returned: | 08/23/2019 |
| Date Due Back: | 08/28/2019 | Level 1 Responder: | MILLER, ADAM D |

The response from the staff member or person in charge of the area/operation being grieved:

Staff followed Policies and Unit Post Orders regarding inmate management of Closed Custody Offenders. Tiers are to have at least one random check per hour, two were conducted. Tiers are to be monitored under indirect observations by Control staff and staff monitoring cameras. Staff did what was expected of them during this incident. The unfortunate way of how the fight started and where it happened limited staffs visibility and did not attract attention.

### Level 2 - Reviewing Authority Response

| | | | |
|---|---|---|---|
| Date Forwarded: | 09/10/2019 | Grievance Disposition: | DENIED |
| Date Due Back: | 09/26/2019 | Level 2 Responder: | MARTINEZ, |
| Date Returned: | 09/13/2019 | Response sent to offender: | 09/13/2019 |

Your grievence has been reviewed and I find:

Your Grievance is denied.

As stated in Level 1 response staff followed SOP and their Post Orders. Staff started their shift at 1430 and discovered you at proximity 1445 and activated emergency protocols immediately after discovering you. Staff are required to do a safety and security check within an hour of assuming their post. That means that the staff arrived on shift, received a briefing (required by policy), dawned required equipment (required by policy) and still went on to your tier 45 minutes sooner then what was required of them.

Staff went above and beyond, exceeding the requirements that are required of them to provide proper care and attention to the G block Close Custody unit and population. Staff just completed shift change and were indeed monitoring all units as efficiently as possible with out compromising other areas of safety and security.

### Offender Appeal

Offender Comments:

The medical, psychological and grievance process evidence clearly shows that Warden Christensen and his staff knowing displaed Deliberate indifference and reckless disregard for my safety. Also being awre of facts via previous and many ivestigations of thousand of gang attacks in this facilty, which inferences could and should have been drawn showing substainal risk of serous harm existed from gangs. Also it was and is your Statutory Duty to protect me while I'm in your care and custody and to be accountable when you fail to protect. So are you going to act professional and compensate for my life long injuries that your mismanagement caused or not? My medical diogooses say my injures are going to be long term if not life long

### Level 3 - Appellate Authority Response

| | | | |
|---|---|---|---|
| Date Appealed: | 09/24/2019 | Grievance Disposition: | MODIFIED |
| Date Forwarded: | 09/24/2019 | Level 3 Responder: | CHRISTENSEN, JAY |
| Date Due Back: | 10/10/2019 | Response sent to offender: | 09/27/2019 |
| Date Returned: | 09/25/2019 | | |

Your appeal has been reviewed and I find:

If by political you mean STG related, all tiers in ISCC have STG related offenders. We follow policy by completing timely regular tier checks. In your particular case your STG affiliate timed the assault and planned it in a specific area that reduced the possibility of being seen in the rear of the unit, behind a pillar and obscured by the tables once you were on the ground. Even after all of that the staff member still located you within minutes of his sign on time and tier checks exceeded policy requirements on that day. Just as in your own words,
"knowing that political member will attack their own as easily as a rival political member" involved yourself with an STG aware they would likely assault. When they did, staff located you and possibly saved your life as well as locating the offender that assaulted you, isolating him from the population, holding him accountable and referring for prosecution. I this case I find that staff followed and exceeded policy.

Facts: Declaration of Vincent D. Garcia #124930:

1. I, Vincent D. Garcia, after first being duly sworn upon his
2. oath, deposes and says as follows:
3. That, I am a resident of Idaho, and over 18 years of age.
4. That, during the month of May, 2019, I was housed in the
5. Gang Unit or "STG Tier" known as G-1, located inside G-Block at
6. ISCC.
7. That, there are Violent Attacks pretty much daily in G-Block.
8. That, there is an ISCC-G-Block Policy to Abandon the Unit and
9. Tiers for "One Hour" at a time, which worsens at "Shift Change"
10. because not only are Tier Checks (Per Policy) only done Once Per
11. Hour... but during "Shift Change" all the Correction's Officers
12. are attending "briefing" and donning "required equipment", and
13. checking in at their "Posts..." (required by policy)".
14. That, the Quotes made in Lines 12 and 13 are quoted from the reply
15. made by Martinez in Grievance #IC190001067.
16. That, similar statements were made by Unit Sgt. Miller to this
17. Grievance and by Warden Christensen to the Appeal.
18. That, this "Policy" may be acceptable for the 6:30 am Shift Change,
19. or maybe even the 10:30 pm Shift Change, but the 2:30 pm Shift
20. Change has Gang Member Inmates Roaming Free on the Tier...
21. Unsupervised for One Hour, giving them Time and Opportunity
22. to Commit Crimes, and in my case Beat me Almost to Death
23. and leave me in a puddle of my own Blood for 20 minutes.
24. On May 6th, 2019, on G-1 at ISCC, inmate Sejran Hetemi
25. Violently Attacked me to the point I was in a Coma for a
26. Month and in the Hospital for 2 more. Hit 57 Times.
27. That, Attack occurred during 2:30 pm Shift Change in the

6.

28. G-1 Dayroom and according to Appeal Response of Warden
29. Christensen "STG affiliate timed the assault and planned it in
30. a specific area that reduced the possibility of being seen in
31. the rear of the unit, behind a pillar and obstructed by the
32. tables". Please Note: Dozens, if not Hundreds of Attacks have
33. been "planned" in that "specific area" and during that specific
34. Shift Change or "Time", because of the "Policy" to Abandon Units for
35. One Hour.... while Close Custody Gang Members Roam Free in the
36. Dayroom. Now, because all Defendants herein, had Knowledge
37. that "STG" inmates plan Attacks at this 2:30 "Shift Change" and
38. in the "specific area" to reduce "the possibility of being seen"
39. and chose not "to take reasonable measures to abate it"....this
40. "Policy" led to the Attack against me on 5-6-19, and the
41. 20 minutes I laid dying on the floor. Now, in Christensen's
42. Denial of my Appeal, he stated, "When they did, staff located you
43. and possibly saved your life". Please Take Judicial Notice of the
44. following: Inmate Sajran Hetemi (My Attacker) Saved my Life, not
45. "staff". On video, the attacker came back and rolled me over
46. on my side as I was Choking and Drowning in my own Blood.
47. I'm in a wheelchair, mostly blind, I suffer from horrible pain,
48. chronic headaches, brain damage, and Post Tramatic Stress
49. Disorder (PTSD) so severely that I want to die everytime
50. I hear a loud noise, a bang or someone starts yelling.
51. I ask you view pages 4 and 5 of this Complaint, they are the
52. actual Grievance and Appeal #IC1900001067 and the Responses. This
53. will show (At Pleading Stage) more than Bare Allegations, but,
54. instead a "Policy" of Deliberate Indifference, that led to
55. the 5-6-19 Attack and my life long Injuries. Then, at the

7.

56. Discovery Phase of this case, I will Gather Evidentiary Exhibits
57. showing How Many Attacks have occurred in G-Block in the
58. one year surrounding my Attack, their Times, Duration, and
59. Injuries, to show this Court and a Jury the Defendant's
60. Policy, Knowledge, and Deliberate Indifference after their
61. Knowledge and because of their Policy. I will also be Subpoenaing
62. inmate Sejoan Hetemi, and Eye Witness Logan Glenn #119012,
63. along with other inmates that have suffered assaults in the same
64. way, same time, and same place.
65. Inmate Hetemi has been Charged by Ada County with Aggravated
66. Battery CR01-19-22598, and Witness Intimidation CR01-20-11526.
67. So, the Video's and Witness Statements do Exist and are Discoverable
68. Information. The Amount of G-Block Physical Altercations in
69. Tandum with the "Policy" should Establish Liability of the named
70. Defendants in this §1983. Video Showed 57 Hits against me.

Individual Actions of Defendants: Deliberate Indifference.

(a). Warden Jay Christensen, while acting under the color of state law, Created, Adopted and Enforced a "Policy" to Abandon Units for One Hour at a Time which worsened at 2:30 pm "Shift Change" which on 5-6-19 resulted in the Attack and Injuries set out in pages 6, 7, and 8 of this Complaint. He also permits an area of "reduced" visibility to exist on unit G-1 that assisted in Plaintiff not being Located by "Staff" for about 20 minutes... Off Camera and without "Staff" present. This "Policy" did, "cause a substantial risk of serious harm". Cortez, 776 F.3d 1046, 1050 (9th Cir. 2015)(quoting Farmer, 511 US at 834). Second, the prison official must act with "deliberate indifference"

8.

("recklessness"). Farmer, 511 US at 834, 835. That did result in "serious harm" on 5-6-19, resulting in Life Long Physical and Psychological Injuries for the Plaintiff. As if it were not for this "Policy"... the Life Altering 20 minutes could Not have Occurred. Furthermore, the "Policy" could NOT have served a legitimate penological objective... Because as a matter of law, "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective". Farmer v. Brennan, supra, 511 US at 834 (citation omitted).

- Due to the Admittances made by Christensen, Martinez, and Miller (All in Agreance) in Grievance/Appeal #IC190000106 7, this is not a Claimed "Policy" it is a Factaul "Policy" and all 4 Defendants still Believe in it and Enforce it to this day.
- This "Policy" attaches Official Capacity Liability of Jay Christensen... but his Personal Choices to Continue this "Policy" after "Knowledge" of Risk of Serious Harm was an act of Deliberate Indifference and thereby opens him up to Liability in his Individual Capacity:
- Official Capacity:
Compensatory Damages: $1,000,000.00
Punitive Damages: $1,000,000.00
- Individual Capacity:
Compensatory Damages: $1,000,000.00
Punitive Damages: $1,000,000.00
- Injunctive Relief: Stop "Policy" of Abandoning Units for One Hour and Shift Changes. And the Immediate Termination of IDOC Employment and Pentition for Defendant Jay Christensen.

9.

(b) Deputy Warden David Dietz; while acting under the color of state law, Created, Adopted and Enforced a "Policy" to Abandon Units for One Hour at a Time which worsened at 2:30 am "Shift Change" which on 5-6-19 resulted in the Attack and Injuries set out in pages 6, 7, and 8 of this Complaint. He also permits an area of "reduced" visibility to exist on unit G-1 that assisted in Plaintiff's not being located by "Staff" for about 20 minutes... Off camera and without "Staff" present.

- This "Policy" did, "cause" a substantial risk of serious harm". Cortez, 776 F.3d 1046, 1050 (9th Cir. 2015)(quoting Farmer, 511 US at 834). Second, the prison official must act with "deliberate indifference" ("recklessness"). Farmer, 511 US at 834, 835. That did result in "serious harm" on 5-6-19, resulting in Life Long Physical and Psychological Injuries for the Plaintiff. As if it were not for this "Policy"... the Life Altering 20 minutes could NOT have occurred.

- This "Policy" attaches Official Capacity Liability to Dietz, ... his Personal Choices to Continue this "Policy" after "Knowledge" of Serious Risk of Harm was an act of Deliberate Indifference and thereby opens him up to liability in his Individual Capacity.

- Official Capacity:
  Compensatory Damages: $1,000,000.00
  Punitive Damages    : $1,000,000.00

- Individual Capacity:
  Compensatory Damages: $1,000,000.00
  Punitive Damages:     $1,000,000.00

- Injunctive Relief: Stop "Policy" of Abandoning Units for One Hour and Shift Changes. And Immediately Terminate the

10.

IDOC Employment and Retention of David Dietz.

(C). Captain Martinez; while acting under the color of state law, Created, Adopted and Enforced a "Policy" to Abandon Units for One Hour at a Time which worsened at 2:30 pm "Shift Change" which on 5-6-19 resulted in the Attack and Injuries set out in pages 6, 7, and 8 of this Complaint. He also permits an area of "reduced" visibility to exist on unit G-1 that assisted in Plaintiff's not being Located by "Staff" for about 20 minutes... off camera and without "Staff" present.

- This "Policy" did, "cause 'a substantial risk of serious harm'". Cortez, 776 F.3d 1046, 1050 (9th Cir. 2015)(quoting Farmer, 511 US at 834). Second, the prison official must act with "deliberate indifference" ("recklessness"). Farmer, 511 US at 834, 835. That, did result in "serious harm" on 5-6-19, resulting in Life Long Physical and Psychological Injuries for the Plaintiff. As if it were NOT for this "Policy"... the Life Altering 20 minutes could NOT have Occurred. Furthermore, the "Policy" could NOT have served a legitimate penological objective... Because as a matter of law, "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective". Farmer v. Brennan, supra, 511 US at 834 (citation omitted).

- Due to the Admittances made by Christensen, Martinez, and Miller (All in Agreeance) in Grievance/Appeal #IC1900001067, this is not a Claimed "Policy" It is a Factual "Policy" and all 4 Defendants still Believe in it and Enforce it to this day.

- This "Policy" attaches Official Capacity Liability to Martinez,... but his Personal Choices to Continue this "Policy" after

11.

"Knowledge" of Risk of Serious Harm was an act of Deliberate Indifference and thereby opens him up to Liability in his Individual Capacity:

- Official Capacity:
Compensatory Damages: $1,000,000.00
Punitive Damages: $1,000,000.00
- Individual Capacity:
Compensatory Damages: $1,000,000.00
Punitive Damages: $1,000,000.00
- Injunctive Relief: Stop "Policy" of Abandoning Units for One Hour and Shift Changes. And the Immediate Termination of IDOC Employment and Bentition for Defendant Martinez.

(d). Sgt. Miller; while acting under the color of state law, Created, Adopted, and Enforced a "Policy" to Abandon Units for One Hour at a Time which worsened at 2:30pm "Shift Change" which on 5-6-19 resulted in the Attack and Injuries set out in pages 6, 7, and 8 of this Complaint. He also permits an area of "reduced" visibility to exist on unit G-1 that assisted in Plaintiff's not being Located by "Staff" for about 20 minutes ... Off Camera and without "Staff" present.
- This "Policy" did, "cause" a substantial risk of serious harm". Cortez, 776 F.3d 1046, 1050 (9th Cir. 2015)(quoting Farmer, 511 US at 834). Second, the prison official must act with "deliberate indifference" ("recklessness"). Farmer, 511 US at 834, 835. That, did result in "serious harm" on 5-6-19, resulting in Life Long Physical and Psychological Injuries for the Plaintiff. As if it

12.

were Not for this "Policy"... the Life Altering 20 minutes could Not have Occurred. Furthermore, the "Policy" could Not have served a legitimate penological objective.... Because as a matter of law, "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective". Farmer v. Brennan, supra, 511 US at 834, 835 (Citations omitted).

- Due to the Admittances made by Christensen, Martinez, and Miller (All in Agreance), in Grievance/Appeal #IC 1900001067, this is Not a Claimed "Policy" it is a Factual "Policy" and all 4 Defendants still Believe in it, and Enforce it to this day.
- This "Policy" attaches Official Capacity Liability to Miller,... but his Personal Choices to Continue this "Policy" after "Knowledge" of Risk of Serious Harm was an act of Deliberate Indifference and thereby opens him up to Individual Capacity Liability.
- Official Capacity:
Compensatory Damages: $1,000,000.00
Punitive Damages:     $1,000,000.00
- Individual Capacity:
Compensatory Damages: $1,000,000.00
Punitive Damages:     $1,000,000.00
- Injunctive Relief: Stop "Policy" of Abandoning Units for One Hour and Shift Changes. And the Immediate Termination of IDOC Employment and Pentition for Defendant Miller.

13.

Declaratory Relief:
Declarations showing which Defendants Deprived Garcia of rights protected by the Constitution or laws of the United States. For use in Criminal Complaints under "U.S. v. Walsh, 194 F.3d 37 (2nd Cir. 1999) Correctional Officer convicted under 18 USC 42, which makes it a criminal act to willfully deprive a person of rights protected by the Constitution or laws of the United States while acting under the color of the law."

I declare under penalty of perjury, that all of the statements made herein are true to the best of my knowledge.

Vincent Daniel Garcia #124930

X [signature] _____  X 5-26-20 _____
    Signiture                             Date

I certify that on the ___ day of May, 2020, I caused to be served via ISCC Paralegal for E-Filing, true and correct copies of the Plaintiff's Motion to Amend, Plaintiff's Amended Complaint, Plaintiff's Motion for Appointment of Counsel, it's Memorandum and Declaration in Support.

To:
A.G. Mark Kubinski at
idoc.idaho.gov.

Vincent Daniel Garcia #124930

X [signature] _____  X 5-26-20 _____
    Signiture                             Date

15.