UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VINCENT DANIEL GARCIA,<br><br>             Plaintiff,<br><br>vs.<br><br>IDAHO STATE CORRECTIONAL CENTER, G-BLOCK CORRECTION OFFICERS, IDAHO DEPARTMENT OF CORRECTION, STATE OF IDAHO, JAY CHRISTENSEN, and ADAM MILLER,<br><br>             Defendants. | Case No. 1:20-cv-00001-BLW<br><br>**ORDER GOVERNING AMENDMENT** |

      In this prisoner civil rights action, Plaintiff Vincent Daniel Garcia was permitted to proceed on failure to protect claims against Defendant Adam Miller. (Dkts. 3, 8.) Plaintiff has submitted a proposed Amended Complaint. Defendant has not yet appeared, but notice of the lawsuit, together with a waiver of service of summons, was provided to the Idaho Attorney General on behalf of Defendant on May 1, 2020. (Dkts. 8, 9.)

      Having reviewed Plaintiff's filings and the record in this matter, the Court will strike the Amended Complaint, due to its improper form and speculative nature. (Dkt. 11.) At an appropriate time, Plaintiff will be permitted to file a second amended complaint, using the forms provided with this Order.

**ORDER GOVERNING AMENDMENT - 1**

# FACTUAL ALLEGATIONS

On May 6, 2019, Plaintiff was a prisoner in custody of the Idaho Department of Correction (IDOC), residing at the Idaho State Correctional Center (ISCC). He was taking a walk on close custody Tier G-1, when an STG gang member attacked him. Plaintiff was knocked unconscious for 20 minutes, was in a coma for a month, suffered broken facial bones that had to repaired with screws, developed a seizure disorder, suffered brain damage, and lost his eyesight as a result of the attack.

In his original Complaint, Plaintiff asserted that the entire incident was captured on video, and that six to eight correctional officers did nothing, or not enough, to stop the attack and mitigate Plaintiff's injuries. In response to Plaintiff's grievance, prison officials disclosed that the place he was attacked had low visibility. The Court noted on initial review that this fact may cut against prison officials if Plaintiff can show that they knew of, or should have discovered but failed to remedy, the low visibility area. Plaintiff also asserted that inmates often select a shift change to proceed with an attack. He did not assert whether prison officials knew that inmates often started altercations at shift changes.

# DISCUSSION OF MOTION TO AMEND COMPLAINT

Federal Rule of Civil Procedure 15 governs the amendment of civil pleadings before trial. Rule 15(a)(2) instructs that the Court should freely grant leave to amend "when justice so requires."

Defendants have not yet filed an Answer to the original Complaint, which generally permits him to file an Amended Complaint. However, Plaintiff's Amended

**ORDER GOVERNING AMENDMENT - 2**

Complaint is subject to the Prison Litigation Reform Act (PLRA),[1] which requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory under the *Iqbal/Twombly* standard.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**ORDER GOVERNING AMENDMENT - 3**

The Court retains screening authority to dismiss claims at any time during the litigation under §1915(e).[2] The Court also has the authority to seek additional information from the parties to assess Plaintiff's claims during the screening process. The Court may exercise its discretion to require an amended complaint or a *Watson* questionnaire.[3]

It is clear from the face and content of Plaintiff's recent filings that he has engaged the help of Jody Carr, a frequent pro se prisoner litigator in this Court, whose habit is to try to expand the litigation into an ever-increasing conglomeration of unrelated claims—which only serves to obstruct the efficient delivery of justice.

Mr. Carr has recently "helped" other prisoners amend their pleadings using his improper style of litigation, and he has caused them to transgress court orders on disclosures, discovery, appointment of counsel, and amendment that have been issued in their cases. In short, recent amendments drafted by Mr. Carr have not met Rule 8's standard of providing a short and plain statement of facts supporting the plaintiff's claim.

As to Mr. Carr, the Supreme Court of the United States has held that prisoners do not have a freestanding constitutional right to provide legal assistance to other inmates. *Shaw v. Murphy*, 532 U.S. 223 (2001). In *Johnson v. Avery*, 393 U.S. 483 (1969), the Supreme Court acknowledged that states "may impose reasonable restrictions and

---

[2] Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [an in forma pauperis] case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious. . . [or] fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

[3] In *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976), the Court determined: "The employment of a form questionnaire is a useful means by which the court can develop the factual basis for the prisoner's complaint."

restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities." *Id.* at 490.

Here, the Court will not permit Plaintiff to work with Mr. Carr in Plaintiff's case, because Mr. Carr's "help" is not really helping anything, but causing an unnecessary expenditure of public resources. Plaintiff should not seek legal advice from Carr, should not ask Carr write out legal documents that Plaintiff can reprint in his own handwriting, or otherwise have Carr involved in this action. Plaintiff is free to seek the help of another prisoner as scribe if he is unable to pursue his litigation on his own. If he is unable to find another scribe among the prison population, he should notify prison officials, including by using the grievance appeal system.

Plaintiff's proposed Amended Complaint is speculative in content and improper in form. Instead of waiting for Defendants to submit disclosures, which likely will reveal who knew what, who did what, and why officials acted as they did, as the Court recommended in the Initial Review Order—Plaintiff (or Mr. Carr) has tried to speculate about what the prison's policies were from prison officials' grievances responses and about how different individuals might have been involved. The amended complaint is almost completely based on speculation, with many unnecessary, misleading, and overstated allegations. Plaintiff newly and implausibly asserts in his amended complaint that the prison has a policy of leaving *no staff whatsoever* to monitor the prison during officials' briefing at shift changes, and that staff have a policy of leaving the tiers *unmonitored for an hour at a time*. Plaintiff baldly asserts that several individual

**ORDER GOVERNING AMENDMENT - 5**

defendants "created" these policies, but he has no facts to support these assertions. He further alleges, with no supporting facts, that "there are violent attacks *pretty much daily* in G-Block." (Dkt. 11, p. 6 (emphasis added).)

Plaintiff, through Mr. Carr, also seeks monetary damages from official capacity policy-based claims, which is contrary to the Eleventh Amendment. If Plaintiff seeks to bring a policy-based claim against a state official in his or her official capacity, it must be a claim for injunctive or declaratory relief only. The proper defendant in such an instance is that prison official who can put into effect a court order that prison officials should act differently, refrain from acting, or revise a policy that is declared to be unconstitutional.

The Court previously advised Plaintiff to review Defendants' disclosures and their responses to discovery and *then* file an amended complaint. Instead, Plaintiff (or Mr. Carr) has ignored this recommendation and filed an amended complaint based on speculation. Because the Amended Complaint is improper and implausible, it will be stricken.

To avoid further waste of judicial resources that occurs when the Court must review a speculative pleading, the Court will order that Plaintiff submit any second amended complaint only *after* disclosures have been exchanged. Furthermore, after Plaintiff receives the disclosures of Defendant, he should determine if he needs any further information about what the policies are, who created them, who knew about the policies, whether the persons responsible for the injuries were acting according to policies, and whether prior incidents of inmates attacking other inmates during shift changes and/or in the obstructed view area were known to prison policymakers and to

**ORDER GOVERNING AMENDMENT - 6**

those persons on duty when Plaintiff was attacked (and, if so, which prison officials). If Plaintiff needs further information, then he can (but is not required to) draft some simple interrogatories to obtain that information from Defendants.

After that, Plaintiff should have all of the facts to decide whether he has enough information to assert a policy-based claim for injunctive or declaratory relief only against a prison official who has authority to put any court order into effect at the prison. Plaintiff will be required to use the Watson questionnaire form included with this Order to prepare a second amended complaint. If Plaintiff needs an additional reasonable time period for amendment, he may seek leave of Court by providing a good reason for an extension of time.

### REVIEW OF THIRD MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff, through Mr. Carr, has filed a third Motion for Appointment of Counsel. (Dkt. 12.) Previously, the Court notified Plaintiff that, if he was blind and/or unable to write, the prison was required to provide a scribe for him. Plaintiff asserts that he asked the prison paralegal for assistance, and she recommended that she use Mr. Carr as a scribe. However, Mr. Carr has acted not as a scribe—which means that Mr. Carr simply writes what Plaintiff tells him to write—but more like a paralegal or lawyer, even though he is not licensed to give legal advice.

If it is true that the prison paralegal recommended Mr. Carr as a scribe or legal helper, then the prison paralegal is ordered to cease making such recommendations. The attorneys for the prison are to ensure that the prison paralegal receives a copy of this Order. A tremendous amount of taxpayer resources are wasted when the Court must

**ORDER GOVERNING AMENDMENT - 7**

attempt to (1) decipher pleadings and papers containing implausible allegations of conspiracy and murder prepared by Mr. Carr for other inmates and (2) rule upon various motions Mr. Carr has prepared for others that contravene General Orders, the "Standard Disclosure and Discovery Order" issued in all prisoner cases, and other Court recommendations and orders.

Here, Plaintiff (or Mr. Carr) has disregarded the Court's prior Order, which states that "it will consider appointment [of counsel] at a later date if the case appears meritorious *after the Court has had an opportunity to review Defendants' defenses and the parties' evidence concerning the facts of this case*." (Dkt. 8, p. 10 (emphasis and parenthetical added).) The Court has not yet had opportunity to review any substantive information about the facts of this case from Defendants, as they have not made an appearance in the case to date. Therefore, the current motion for appointment of counsel is premature. The motion will be denied without prejudice. The Court will continue to review this case to determine whether appointment of counsel is necessary, without the need for Plaintiff to file another motion.

This Order has no effect on Mr. Carr's filings he may make on behalf of himself. While Mr. Carr's "scorched earth" litigation style is not the preferred method for effective and efficient litigation in federal court actions, he is welcome to come to federal court to air his grievances under any court orders specifically applicable to him and his cases.

# ORDER

**IT IS ORDERED:**

1. Plaintiff's second request for appointment of counsel (Dkt. 12) is DENIED without prejudice for the same reasons cited in the Court's Initial Review Order.

2. Plaintiff's Motion to Amend Prisoner Civil Rights Complaint (Dkt. 10) is DENIED without prejudice.

3. Plaintiff's Amended Complaint (Dkt. 11) is STRICKEN.

4. Plaintiff may file a second Amended Complaint within 90 days after entry of this Order. If Plaintiff files a second Amended Complaint, he must use the forms provided by the Clerk of Court that accompany this Order.

5. Plaintiff shall not solicit or use Mr. Jody Carr's aid in this case.

6. The prison paralegals shall not recommend to other prisoners that they should use Mr. Carr as a scribe, paralegal, or legal helper to other prisoners.

7. Counsel for Defendants shall provide a copy of this Order for Mr. Carr to read, but not keep. Counsel for Defendants shall instruct the prison paralegals that, if other prisoners ask for a scribe or legal help, they shall *not* recommend Mr. Carr.

8. Counsel for Defendants shall ensure that Plaintiff is able to access an appropriate "scribe" at the prison or to provide one for him if he is unable to see or write for himself.

9. The Clerk of Court shall provide a copy of this Order to Mark Kubinski, counsel for Defendants.



DATED: June 18, 2020

_____
B. Lynn Winmill
U.S. District Court Judge