Vincent Daniel Garcia, #124930
*(full name/prisoner number)*
Idaho State Correction Center
Post Office Box 70010
Boise, Idaho          83707
*(complete mailing address)*

U.S. COURTS

SEP 11 2020

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

Daniel Vincent Garcia,

Plaintiff,

v.

Sergeant Adam Miller;

Jay Christensen, Warden;

Michael Rice, Case Manager;

Director, Idaho State

Department of Corrections,

(Josh TeWalt), et.al.,

Defendant(s).

Case No.  1:20-CV-00001-BLW
*(to be assigned by Court)*

**PRISONER CIVIL RIGHTS AMENDED COMPLAINT IN WATSON QUESTIONNAIRE FORMAT: FAILURE TO PROTECT CLAIMS**

Jury Trial Requested:   X   Yes   ____ No

### JURISDICTION

The United States District Court for the District of Idaho has jurisdiction over my claims because they arise under a federal statute or the federal Constitution.

### PLAINTIFF

My name is   Vincent Daniel Garcia  . I am a citizen of the State of   Idaho  ,

presently residing at   the Idaho State Correction Center  .

**Use for Failure to Protect Claim**

**DEFENDANT'S NAME and TITLE (one only)** Adam Miller, Corrections Sergeant
**DEFENDANT'S EMPLOYER and WORK PLACE** Department of Correction, Idaho State Correction Center

*To state a claim for failure to protect under the Eighth Amendment's cruel and unusual punishment clause, a plaintiff must state facts showing (1) the defendant was aware of facts from which he should have known that a substantial risk of serious harm existed; (2) the defendant did, in fact, recognize the substantial risk; and (3) the defendant disregarded that threat or risk by failing to take reasonable measures to prevent or stop it.*

On this date 11/23/2018, at this place Idaho State Correctional Institution, I became aware of the following threat to my safety or substantial risk of serious harm:

> On the above date I was being Classified by the Reception And Diagnostic Unit, (RDU), case manager. I scored out, by the classification manual, as being "Medium" custody. However, the case manager in RDU "over-rode" me and classified me as "Closed Custody". Closed Custody is the custody level which is used to house violent or troubled inmates, as well as inmates who are a disciplinary problem, or gang members. It was known a gang war was comming.
> I asked and pleaded not to be sent to Closed Custody, and if that was not possible, then I asked to be sent to I.M.S.I., and not I.S.C.C.

I first provided notice to prison officials (who may not be the defendant) of the threat or risk of harm on this date, **11/24/2018**, by doing this: Sending concern forms, speaking to Mr. Michael Rice, speaking to various prison officers at RDU.
A person named **Michael Rice** (who may not be the defendant), responded to my request with this response:

> "when you get to I.S.C.C., speak to the case manager at that facility."

On these dates, **12/31/2018** to **1/28/2019**, this particular defendant learned of the existence of the threat or risk of harm, and this is how he learned about it (state who told him/her, where he/she read it, where he/she saw it, etc.).

> On 12/31/2018 Idaho State Correction Center Investigation Unit, in conjunction with State Investigation Unit, (SIU), and South Boise Prison Complex, (SBPC), investigation Units, opened case file(s) ISCC-2018-584; and ISCC-2019-023.
> During these investigations it was discovered that there was going to be some planned attacks between two, (2) rival prison gangs known as "A.K." or Aryan Knights, and the "South Siders" or Surenos. The Plaintiff is known as a Soreno. Prison staff knew that violence between gangs was going to happen.

Prisoner Civil Rights Amended Complaint in Watson Questionnaire Format: Failure to Protect Claims - 2
Rev. 5.18.20

On these dates, __12/28/2018__ to __5/6/2019__, at this place, __"G-Block", I.S.C.C.__, this is how this defendant ignored the threat or risk of harm to me:

> Sgt. Miller, even though he was aware of the fact that a "gang war" between the South-Siders and A.K., (Sureno's and Aryan Knights), was going to happen, he allowed his staff to open the cell doors of these gang members at the same time, thus allowing suspected violence to happen. Sgt. Miller, and all staff who worked on Tier "G-1", knew that violence between these gangs was going to happen. Sgt. Miller, and all staff who worked in G-1 knew that there was a "Blind Spot", a spot of low/no visibility under the stair case. Sgt. Miller and all staff who worked in G-Block knew from prior assaults that such inmate assaults usually happened during the time when Officer's changed shift. This is a time when there is limited staff on hand. On 5/6/2019, I was violently attacked for a period of approximately 20 minutes in this "blind Spot". During this 20 minute period of me being assaulted, the security staff actually came on the loud speaker telling inmates to "put on your shirt", or "get off the top tier", completely ignoring the fact that I was laying on the floor and I was suffering life threatening injuries, bleeding out. The "Blind Spot", or place of no/limited visibility is under the star case or at the back of G-1, Sgt. Miller knew this blind spot exists, (on camera), and did nothing to fix or remedy this issue. Sgt. Miller, knowing this attack was going to happen, ~~did not assign any security staff to be on the tier.~~

This is what this defendant could have or should have done to prevent or stop the threat or harm:

> Because Sgt. Miller knew of the violence on tier G-1, and because Sgt. Miller knew of the blind spot on tier G-1; and because Sgt. Miller knew of the contents of investigative files, ISCC-2018-584; and ISCC-2019-023, Sgt. Miller should have never allowed the doors of the cells that contained members of the Aryan Knights and the Sureno's to be opened at the same time. Sgt. Miller should have Ordered that a Corrections Officer be stationed on the tier at all times. Sgt. Miller should have ordered an extra camera be located to record the "Blind Spot". The "blind Spot", or place of no/limited visibility should have been corrected by construction or the posting of an extra security staff.
> Because Sgt. Miller did nothing to correct any of the above items, he was clearly deliberately indifferent to my safety. He failed to protect me from harm. He failed to protect me from a known threat/risk to my health/safety and well being.
> Sgt. Miller knew, from prior assaults on tier G-1, that the majority of these attacks occurred during "shift change", and any reasonable, professional security Officer would have, or should have posted extra officer on the tier during times when inmates were out of their cells.
> Sgt. Miller and all security officers who worked in tier G-1, who have viewed the security cameras know, there is a blind spot, place of no/limited visibility, that is unsafe, where assaults happen, yet nothing was done by Sgt. Miller to "fix" this area of no/or limited visibility.

Because this defendant ignored the threat or risk of harm to me, this is how I was injured/or how I believe I will be injured in the future (as a result of this particular defendant's acts):

> I was brutally beaten, on camera, in the dayroom of G-1, at I.S.C.C. I was knocked unconscious and my face was severely beaten. My left orbital socket was broken; Left cheek bone was broken; Lower left jaw bone was broken; Blindness in both eyes; Brain injury, including memory loss; Cannot walk without a walker; I now have seizures. It took several metal plates in my jaw/face, many metal screws in my jaw/face to surgically repair my face. I am in severe pain and anguish every day.
> My medical file will assist in this case, as will the appointment of an expert in the medical field.
> This is the same area of this prison where violent assaults previously happened, when this prison was privately owned.

As background information only, here are other facts about when, where, how, and why this Defendant's action or inaction caused the harm or is allowing the threat of harm to continue:

> Previously, when this prison was owned and operated by Corrections Corporation of America, (CCA), the exact same types of assault occurred in the exact same tier. It was found in those previous assaults and in previous types of litigation, in this Court, that it was a lack of staffing on these tiers, and a lack of supervision on these tiers, and that staff allowed members of the same gangs out of their cells, that caused the previous litigation(s).
> It is obvious that the same situations still exist today, and are possible to happen again in the future.
> Clearly an injunction is needed in this case to cure this problem, or some other form of Court intervention into this case.
> Each of the Defendants named in this case have worked at this facility for literally years. Each named Defendant knows that cell Block G-1 has a blind spot, or area of low/no visibility, yet has done nothing over the years to fix or address this problem. It was clear from the investigative files that there was going to be violence between the two gangs mentioned, yet there was no extra security measures taken.

If I am asserting that this defendant acted or refused to act out of malicious or purposeful intent to cause me harm, not just out of recklessness, these are the supporting facts (when, where, how, why) to show that the acts or omissions were done with knowledge and intent, rather than only reckless disregard for my safety:

> The investigative case files will prove that these defendants knew of the serious threat to the safety of members of these two gangs. That there was a clear, and knowledgable threat. It is also clear that these Defendants had knowledge of the blind spot, or area of low/no visibility and did nothing to correct this problem. Also very clear is the fact that Defendants Miller and Christensen both had prior knowledge that such assaults happen during shift change but did nothing to effect changes to such pattern and practice, which allowed the assault to go undetected.
> The fact that the investigative files show knowledge of assaultive behavior going to happen, and the fact that Defendants did not order extra security to be placed on this tier, is clearly reckless and a deliberate indifference to my safety.
> The Defendants refused to fix, (construction), the bind spot or area of low /no visibility. This was done purposefully in an attempt to save money.
> The Defendants refused to place extra security on tier G-1, in an attempt to purposefully save money.
> It is also malicious to know that there is a threat of a "gang war", yet open the cell doors of those who are suspected of such war, at the same time, allow these assaults to happen.

These are the remedies I am asking for (such as money, or an order that this defendant act or stop acting in a certain way, or a court declaration that the defendant violated my constitutional rights):

> I am seeking Ten Million Dollars in damages. I am also seeking an injunction from this Court which provides that some form of Construction take place to "fix" the blind spot; that until such is fixed, that extra security be placed on such tier; or any other measure this court or the jury deems to be just.

This is a brief list of the evidence (witnesses and documents) I now know of or possess that I intend to present at trial to prove all of the allegations above and a brief explanation of what it proves:

> Investigative files ISCC-2018-584; ISCC-2019-023; witness statements from other offenders who were on tier G-1 when this assault happened; IDOC list of assaults on tier G-1 for the previous two years;
>
> The Defendants have not provided to me any documents, (initial disclosure), so this information is not readily available to me; AND, the fact that I have not been provided with any initial disclosures makes this amendment very hard to perfect.

On these dates, __8/14/19; 7/30/19__, this is what I did to exhaust my administrative remedies to bring this particular claim to the attention of supervisors or authorities before I included this claim in a federal civil rights lawsuit, and I am attaching the concern forms, grievances, and grievance appeals to this document, or explaining why I have not used the grievance process or attached the forms.

> I have filed several grievances regarding this issue. On at least two occassions my grievances were rejected as "beyond the 30 time limit", even though I was hospitalized with brain damage during the 30 time limit. I did grieve the fact that I was not allowed to process my grievance(s).

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read the complaint, and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at IDAHO STATE CORRECTION CENTER on SEPTEMBER-01-2020.
*(Location)* *(Date)*

Plaintiff's Original Signature

**Copy pages 2 to 6 for each different Defendant and separately state all information particularly applicable to that Defendant only.**

## Use for Failure to Protect Claim

**DEFENDANT'S NAME and TITLE (one only)** Jay Christensen, Warden
**DEFENDANT'S EMPLOYER and WORK PLACE** Idaho Department of Correction; Idaho State Correction Center,

*To state a claim for failure to protect under the Eighth Amendment's cruel and unusual punishment clause, a plaintiff must state facts showing (1) the defendant was aware of facts from which he should have known that a substantial risk of serious harm existed; (2) the defendant did, in fact, recognize the substantial risk; and (3) the defendant disregarded that threat or risk by failing to take reasonable measures to prevent or stop it.*

On this date 5/6/2019, at this place Idaho State Correction Center, G-Block, I became aware of the following threat to my safety or substantial risk of serious harm:

> On May 6th, 2019, while I was housed at the Idaho State Correction Center, G-Block, I was physically assaulted in a "blind Spot", or a place of limited or no visibility. Defendant Christensen was aware of this blind spot, or area of no/limited visibility prior to the assault upon me. Defendant Christensen had prior knowledge that an assault was going to happen between members of two rival prison gangs. The Aryan Knights and the Surenos. Even knowing that this was going to happen, Defendant christensen did not place any security staff on the tier.

I first provided notice to prison officials (who may not be the defendant) of the threat or risk of harm on this date, 11/24/2018, by doing this: Sending concern forms speaking to my case manager Michael Rice.

A person named Mike Rice (who may not be the defendant), responded to my request with this response:

> "when you get to I.S.C.C., speak to your case manager".

On these dates, 12/31/2018 to 1/28/2019 this particular defendant learned of the existence of the threat or risk of harm, and this is how he learned about it (state who told him/her, where he/she read it, where he/she saw it, etc.).

> Defendant Christensen was fully briefed as to the content of investigative files I.S.C.C. 2018-584; and ISCC-2019-023. It was during the investigation of the above files that it was discovered that there was going to be some form of "gang War" between the Aryan Knights and the Surenos. Prison staff knew this was going to happen, but did not order extra precautions such as not allowing these inmate out of their cells at the same time, or having staff placed upon the tier.

On these dates, 12/28/2018 to 5/6/2019, at this place, G-Block, ISCC, this is how this defendant ignored the threat or risk of harm to me:

> Warden Christensen, even though he was aware of the fact that there was a "Gang War" going to take place between the Surenos and thje Aryan Knights, took no type of extra security precautions.
> Warden Christensen did not work to place security staff physically on the tier when inmate were out of their cells.
> Warden Christensen knew of the Blind spot, or place of no/limited visibility, yet did nothing to correct it.
> Warden Christensen did not order that members of these two rival gangs were not to be out of their cells at the same time.
> Warden Christensen, even knowing about the contents of the above investigative files, did nothing to protect any of the inmates who he had housed on tier G-1

This is what this defendant could have or should have done to prevent or stop the threat or harm:

> Warden Christensen could have ordered that inmates from these two rival gangs were not to be out of their cells at the same time.
> Warden Christensen could have ordered that security staff be physically present on the tier at all times, instead of having the "indirect" security that he has.
> Warden Christensen could have installed extra cameras to over come the area of limited or no visibility.
> Warden Christensen could have ordered his staff to conduct extra walks on the tier at times when inmates did not know the walks were going to happen.

Prisoner Civil Rights Amended Complaint in Watson Questionnaire Format: Failure to Protect Claims - 3
Rev. 5.18.20

Because this defendant ignored the threat or risk of harm to me, this is how I was injured/or how I believe I will be injured in the future (as a result of <u>this particular</u> defendant's acts):

> I was brutally beaten, on camera, in the dayroom of tier G-1, at ISCC. I was knocked unconscious and my face was severely beaten. My left orbital socket was broken; my left jaw bone was broken; My left cheek bone was broken; I was in a coma for a great length of time. I was in the hospital for 30 days because of the severity of the beating. I have brain injuries, I am now partially blinded in both eyes. I can not walk without a cane or a walker. It took many many screws and plates in my face and head to fix my broken bones.
> My medical file will prove these damages. This is the same area of the prison where numerous assaults were done when the prison was owned by CCA. Nothing has changed since the State took over.

As background information only, here are other facts about when, where, how, and why <u>this</u> Defendant's action or inaction caused the harm or is allowing the threat of harm to continue:

> Previously, when this prison was owned by Corrections Corporation of America, the exact same types of assaults happened in the same tier. (the tiers have since been renamed, but it is the same place). It was found, in previous litigation that a lack of staffing on these tiers was part of the problem as to why these assaults take place.
> It is obvious that the same situation still exist today. It was a lack of staff on the tier that allowed this to happen to me, as well as a blind spot. or place of no/limited visibility.
> It was clear from the investigative files, and the investigation done that there was going to be some form of violence between these two gangs, yet there was no type of preventative measures taken to protect the inmates, including myself.
> All of these named Defendants have worked at this facility for years, are aware of the violence on this tier, are aware of the blind spot, or area of no. or limited visibility, yet did nothing to correct this problem.

If I am asserting that this defendant acted or refused to act out of malicious or purposeful intent to cause me harm, not just out of recklessness, these are the supporting facts (when, where, how, why) to show that the acts or omissions were done with knowledge and intent, rather than only reckless disregard for my safety:

> The investigative files will prove that these Defendants had prior knowledge that there was going to be violence between two rival prison gangs, but did nothing to stop it from happening. It is also clear that this Defendant knew of the blind spot, or area of limited/no visibility, yet did nothing to correct this problem.
> This Defendant also was aware that these types of assaults happened when the security staff was changing shifts, but did not place extra security staff on the tier during this time.
> This Defendant also refused to order that security staff be placed physically on the tier when inmates were allowed to be out of their cells. This Defendant approved of using only indirect supervision, (event though he was aware that the camera could not see the entire area. This Defendant approved of only using indirect supervision, in place of direct supervision, in the most violent tier in his prison.
> The above acts are clearly done purposefully. They are done out of an intent to save money by not providing enough security staff to propurly staff the tiers.
> The above acts were done with knowledge and with intent.

These are the remedies I am asking for (such as money, or an order that this defendant act or stop acting in a certain way, or a court declaration that the defendant violated my constitutional rights):

> I am seeking Ten Million Dollars in damages. I am also seeking an injunction from this Court which provides that some form of construction take place to fix the blind spot, and that security staff be on the tiers and have first hand supervision of inmates when they are out of their cells.
> I seek the appointment of a special master to look into the violence at ISCC.

This is a brief list of the evidence (witnesses and documents) I now know of or possess that I intend to present at trial to prove all of the allegations above and a brief explanation of what it proves:

> Investigative files ISCC-2018-584; and ISCC-2019-023; witness statements from other inmates who were on tier G-1 when this assault took place. IDOC list of assaults in G Block for the two year period of time before this assault took place will show that staff should have been placed directly on the tier when inmates were out of their cells.
>
> The Defendants have not provided to me any type of initial discovery material, so I can not name the individual officers who worked in G-1 on the day of the assault. This makes this amendment very difficult for me to perfect.

On these dates, 8/14/19; 7/30/19 , this is what I did to exhaust my administrative remedies to bring this particular claim to the attention of supervisors or authorities before I included this claim in a federal civil rights lawsuit, and I am attaching the concern forms, grievances, and grievance appeals to this document, or explaining why I have not used the grievance process or attached the forms.

> I have filed several grievances concerning this incident. On at least two occassions my grievances were rejected as not filed within 30 days of the incident even though I was in the hospital for 30 days, and in a coma for part of those.
> I did grieve the fact that I was not allowed to file the two grievances, and ~~I did eventually file and process a grievance.~~

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read the complaint, and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at IDAHO STATE CORRECTION CENTER on SEPTEMBER-01-2020 .
(Location) (Date)

_____
Plaintiff's Original Signature

**Copy pages 2 to 6 for each different Defendant and separately state all information particularly applicable to that Defendant only.**

Prisoner Civil Rights Amended Complaint in Watson Questionnaire Format: Failure to Protect Claims - 6
Rev. 5.18.20