__Vincent Daniel Garcia, #124930__
*(full name/prisoner number)*
__Idaho State Correction Center__
__Post Office Box 70010__
__Boise, Idaho       83707__
*(complete mailing address)*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| __Vincent Daniel Garcia__ , <br><br>Plaintiff, <br>        v. <br>__Sergeant Adam Miller;__ <br><br>__Jay Christensen, Warden;__ <br><br>__Michael Rice, Case Manager;__ <br><br>__Director, Idaho State__ <br><br>__Department of Corrections,__ <br><br>__(Josh TeWalt), et.al.,__ <br><br>Defendant(s). | Case No.   1:20-CV-00001-BLW <br>*(to be assigned by Court)* <br><br>**PRISONER CIVIL RIGHTS AMENDED COMPLAINT IN WATSON QUESTIONNAIRE FORMAT: POLICY-BASED CLAIMS AGAINST THE STATE (OFFICIAL CAPACITY CLAIMS AGAINST STATE OFFICIALS FOR FUTURE INJUNCTIVE RELIEF)** <br><br>Jury Trial Requested:    _X_  Yes   ____ No |

### JURISDICTION

The United States District Court for the District of Idaho has jurisdiction over my claims because they arise under a federal statute or the federal Constitution.

### PLAINTIFF

My name is __Vincent Daniel Garcia__ . I am a citizen of the state of __Idaho__ ,

presently residing at __Idaho State Correction Center__                                                     .

## Use for Policy-Based Claim against the State
### (official capacity claim against state officials for future injunctive relief)

**Name and title of the state official who can put into effect the injunctive relief I am requesting:**
__Josh TeWalt, Director Idaho State Department of Corrections__

*The Eleventh Amendment to the U.S. Constitution prohibits a plaintiff from suing the State for money damages or any other relief. Instead, a plaintiff may file suit to obtain a federal court order for State officials to do or to stop doing something in the future, or to obtain a federal court declaration (statement) that a policy is unconstitutional. The way to do this is to file suit against a state official in his or her "official capacity," who has authority to put into an injunctive relief order. The U.S. Supreme Court has explained that a lawsuit brought "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." However, the Eleventh Amendment still prohibits a claim for monetary damages on a policy-based claim against a State official in his or her official capacity.*

*To state a policy-based civil rights claim against a state official in his or her official capacity, a plaintiff must allege facts showing: (1) the plaintiff was deprived of a constitutional right; (2) the State had a policy or custom; (3) the State policymakers (not the defendant) had facts available to him or her from which he or she knew or should have known that the policy or custom was substantially certain to result in the violation of prisoners' constitutional rights; (4) the policy or custom caused the violation; (5) the plaintiff suffered injury or damage or is at serious risk of suffering injury or damage; and (6) the defendant is the State official with authority to put into effect a change in policy that the plaintiff desires as a remedy.*

The State's policy or custom that harmed me is this:

> The State of Idaho has a policy and or custom of not having a security Officer physically on the tiers at the Idaho State Correction Center, specifically on G-Block. The State of Idaho has a policy or custom of only supervising the units by way of a video camera, which can not see all of the area or activities on the tiers.

These are facts that show a State policy or custom exists:

> In answer to my grievance, Defendant Miller admitted, in my grievance that, "tiers are to be monitored under indirect observations by control staff and staff monitoring of cameras".
> This shows that there is a policy or custom of not having a security staff physically on the tiers when inmates are out of their cells, and that supervision of these inmates is done by, "indirect supervision".
>
> Also, Warden Jay Christensen, in the appellate response to my grievance, states, "...we followed policy by completing timely regular tier checks".
> This also shows that there is no security staff stationed on the tiers. (Physically). If in fact inmates know when the tier checks are to be completed, then that is when assaults and other acts of violence would be done, and would not be discovered until the next tier check. This policy and or custom, of not having a security officer physically on the tier when inmates are out of their cells has created a substantial risk of harm.

These are facts showing how the State's policymakers knew or should have known that this policy or custom probably would violate prisoners' rights when they created the policy:

> It is a fact that the security staff are not ordered to be physically stationed on the tier when the inmates are out of their cells.
> It is a fact, proven by my grievance, that security staff only monitor the tiers by way of indirect monitoring. That is a custom or policy.
> It is also a fact that there is a "blind spot" or place of limited/no visibility on tier G-1. Security staff are aware of this and have done nothing to cure this problem.
> Previously, many, many, many assaults have occurred on tier G-1, most of them during shift change, or directly after a security staff physically walk the tier. Inmates, and security staff all know that once an officer walks the tier, they will not physically be back on the tier for about one hour.
> By having a custom and or policy of not having a security staff posted on the tier when inmates are out of their cells, it raises a probability that assaults will occur in the absence of such staff.
> My rights under the Eighth Amendment to the United States Constitution, and the fourteenth amendment have been violated.

On these dates, __5/6/2019__, at this place __Idaho State Correction Center__, this constitutional right of mine was violated __Eighth Amendment, Fourteenth Amendment__, by these persons acting for the entity, when they acted or failed to act when they should have, as follows:

> At the present time I do not know the names of the individual security personnel who worked in G Block on 5/6/2019. I do expect to know these names as discovery progresses. However, and inasmuch, Defendant Miller, and the security staff that was assigned to G Block on 5/6/2019 had advanced knowledge that there was going to be violence between two prison gangs. The Aryan Knights, and the surenos. This is documented in investigative case files ISCC-2019-023, and ISCC-2018-584.
>
> Because security staff and Defendant Miller all had knowledge in advance that such violence was going to happen, the cell doors of these gang members should never have been opened at the same time. Yet staff did open them. Furthermore, knowing that such violence was going to happen, there should have been a security staff stationed on the tier. There should never be any type of Blind spot or area of limited or/no visibility in a prison.
>
> When the aforementioned individuals opened the cell doors, knowing that violence was going to happen, this is an act of failing to protect.
>
> The policy or custom in this case, is the policy or custom of allowing rival gangs out of their cells at the same time.
>
> These individuals should have known, and should have acted to make sure these rival gangs were never let out of their cells at the same time.
>
> The policy or custom of not ordering that security staff have direct observation of inmates, by having security staff on the tier, physically, when inmates are out of their cells has allowed the assault upon me to take place.
>
> This same policy or custom has allowed the assault of many other inmates in the past to occur.

These are the facts showing that these persons acted in this way *because of* a policy, instead of according to their own professional judgment:

> I have asked, in person, Defendant Miller if there is a policy that directs that security staff be placed on the tier. I was told that there is no policy that orders they be on the tier and that indirect supervision, by way of a camera is all that is necessary.
> Security staff who worked in G Block on 5/6/2019 followed the orders of Defendant Miller as he was the Sergeant of G-Block.
> Based upon this, I am asserting that there is a policy that provides that security staff have indirect monitoring of inmates, and not direct physical monitoring by being on the tier when inmates are out of their cells.
> This is supported by my grievance and the statement thereof by Sergeant Miller that all that is required is indirect monitoring.

These are the injuries I suffered caused by the existence of the policy or custom:

> I was knocked unconscious and I was severely beaten and left to bleed out. I suffered a broken orbital socket; Broken Left cheek bone; broken left jaw bone; I suffer blindness in both eyes; I cannot walk without a cane or a walker; I have several metal plates in my face and head; I have numerous screws in my face and head; I was in a coma for about a month or so; at least I was in the hospital for that length of time.

I am asking the Court to order that Defendant (who is the State official who can make a policy change) act or stop acting in a certain way, or a court declaration that defendant violated my constitutional rights):

> I am asking this Court to order an injunction that provides that security staff have direct supervision of inmates at all times they are out of their cells.
> I am also seeking a declaration from this Court that my Constitutional rights have been violated.

These are facts showing that the policy or custom has been used in the past and that it has caused other prisoners the following harm (who, what, why, when, where):

> I know that there have been many, many, many assaults that have taken place in G-Block because of the indirect supervision, and the fact that there is a blind spot, or area of low/no visibility. I know that inmates wait until shift change to do these assaults because of the lack of security staff during shift change. I also know that these assaults take place right after a security staff walks the tier, because the inmates know there will not be another walk for an hour or so. I know these facts from my own personal knowledge.
> I also know that during discovery the defendants will be required to produce these same facts with documents, and security footage of G- Block.

This is a brief list of the evidence (witnesses or documents) I know of or possess that I intend to present at trial to prove all of the allegations above—especially that a policy or custom exists—and a brief explanation of what it proves:

> I have in my possession one statement from an inmate who was present on G-1 when this assault occurred. I also have my grievance whereas the Defendants admit that only indirect supervision is used on G-Block.
> I know that there is security footage available from the date and time of the incident, but I have not been provided this by the Defendants.
> My medical record will show the depth of the injuries that were sustained by me at the time of this assault.

On these dates, 8/14/19; 7/30/19 , this is what I did to exhaust my administrative remedies to bring this particular claim to the attention of supervisors or authorities before I included this claim in a federal civil rights lawsuit, and I am attaching the HSR, concern forms, grievances, and grievance appeals to this document, or I am explaining why I have not used the grievance process or attached the forms.

> I have filed several grievance concerning this issue. On at least two, (2), occassions my grievances were returned to me as "beyond the 30 day time limit to file a grievance". This was done even though I was in intensive care for 30 days, and even though I suffered from brain damage. Eventually I did file an appeal from the denial of allowing me to file a grievance beyond the thirty day time limit, and I did in fact eventually grieve the incident in question.

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read the complaint, and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at IDAHO STATE CORRECTION CENTER on SEPTEMBER 01-2020.
(Location) (Date)

Plaintiff's Original Signature